**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SHEILA GORDON,**

        **Plaintiff,**

**-vs-**                                  **Case No. 6:04-cv-1152-Orl-KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

**ORDER**

This cause came on for consideration without oral argument on the Complaint filed by Sheila Gordon, seeking review of the final decision of the Commissioner of Social Security terminating her social security disability benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the transcript of the proceedings before the Social Security Administration. Doc. No. 19. This matter has been referred to me for disposition pursuant to the consent of the parties. 28 U.S.C. § 636(c).

**I.  PROCEDURAL HISTORY.**

In April 1998, Gordon filed an application for a period of disability and disability insurance benefits under the Federal Old Age, Survivors and Disability Insurance Program (OASDI), 42 U.S.C. § 401, *et seq*. TR. 17. On August 6, 1998, the Social Security Administration (SSA) concluded that Gordon was disabled as of March 27, 1998. The SSA found that Gordon met the

requirements contained in the former Listing 9.09A, 20 C.F.R. pt. 404, subpt. P., App. 1 § 9.09A.[1] TR. 19.

Thereafter, the SSA continued to review Gordon's disability status. On December 12, 2001, the SSA notified Gordon that it had determined that she was no longer disabled as of December 1, 2001, and that her benefits would cease in February 2002. TR. 71-72. Gordon appealed this finding. A hearing was held before a disability hearing officer (DHO) on July 23, 2002. TR. 62.[2] The DHO found that Gordon was no longer disabled. TR. 64.

Gordon requested a hearing before an administrative law judge (ALJ), which was held on May 14, 2003. Gordon, who testified at the hearing, was not represented by counsel.[3] Gordon's daughter, Jillese Gordon Riley, also testified at the hearing. TR. 34-47.

After considering the testimony and the medical evidence presented, the ALJ found that Gordon had engaged in substantial gainful activity from November 2001 through March 2002, but not prior to or after those months. TR. 18. The ALJ concluded that Gordon had the following impairments: gastric bypass surgery in February 1999, which was reversed in August 2001, with complaints of pancreatitis[4] and abdominal pain; depression; and, degenerative changes in her

---

[1] On October 25, 1999, the SSA removed Listing 9.09 from the listing of impairments.

[2] There is no transcript of the hearing before the DHO in the record.

[3] "A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995). Gordon testified at the hearing that she was aware of her right to counsel and that she waived that right. TR. 36. Gordon does not contend that the Commissioner failed properly to inform her of her right to representation at the hearing.

[4] "Inflamation of the pancreas." STEDMAN'S MEDICAL DICTIONARY 1286 (26th ed. 1995).

knees and ankles. TR. 22. The ALJ determined that Gordon's current impairments were severe but that they did not meet or equal any of the impairments listed in the applicable social security regulations. *Id.*

The ALJ observed that at the time of the SSA's initial disability determination in 1998, Gordon weighed 333 pounds and was ambulating with the assistance of a cane. TR. 21.[5] Since August 2001, however, Gordon's weight had fluctuated between 127 and 252 pounds with her "most recent weight being 230 pounds." TR. 21-22. Hence, the ALJ found that Gordon no longer met the weight requirement of former Listing 9.09A. The ALJ further noted that Gordon was able to ambulate effectively without the use of an assistive device, despite degenerative changes in her knees and ankles. TR. 22. Thus, the ALJ concluded that "comparison of the medical evidence shows that the claimant has had medical improvement of her impairments . . . ." *Id*.

Turning next to the question of Gordon's residual functional capacity, the ALJ found that Gordon's depression resulted in "mild restrictions in activities of daily living, mild difficulties maintaining social functioning, and moderate difficulties with concentration, persistence and pace[,] . . . [with] no [evidence] of decompensation." *Id*. In support of this determination, the ALJ noted, among other things, that in March 2002 Gordon's employer reported that she "got along with everyone, had no problems with attendance or punctuality, maintained appropriate appearance, did not require special supervision or considerations, and had no problems accepting and responding appropriately to criticism from supervisors[,] . . . did not let things bother her[,] . .

---

[5] It is undisputed that the records upon which the ALJ and DHO relied to describe Gordon's condition at the time of the original disability determination are not in the record before the Court. Doc. No. 30.

. [and] was able to understand and carry out simple verbal instructions but seemed to lose her concentration after a certain period of time . . . ." *Id*. The ALJ also noted that Gordon previously reported that she was able to drive a car, shop a little, take care of her personal hygiene, cook, and do some household chores. *Id*.

The ALJ determined that Gordon had the residual functional capacity (RFC) to perform substantially all of the requirements of unskilled light work.[6] TR. 25-26. The ALJ found that although Gordon had moderate difficulties with concentration, she could perform simple, routine repetitive tasks. TR. 26. The ALJ determined that Gordon's allegations of severe pain and limitations were not entirely credible and that they were not supported by the medical and other evidence of record. TR. 23.

The ALJ further found that Gordon was unable to perform her past relevant work as a nursing home cook. TR. 26. However, the ALJ concluded that because Gordon had the capacity to perform substantially all of the requirements of unskilled light work, a finding of "not disabled" was supported by Medical-Vocational Rule 202.20. In reaching this determination, the ALJ relied exclusively on the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2 (the "grids"), to determine that jobs existed in significant numbers in the national economy that Gordon was able to perform. TR. 25-26. Based on this analysis, the ALJ found that Gordon's disability ceased as of December 1, 2001. TR. 26.

---

[6] Pursuant to 20 C.F.R. § 404.1567(b), light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." The regulation further provides that "[e]ven though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id*.

Gordon requested review of the ALJ's decision by the Appeals Council. On April 23, 2004, the Appeals Council denied Gordon's request for review. TR. 7-9. This appeal timely followed. Doc. No. 1, 18.

## II.     JURISDICTION.

The ALJ's decision become the final decision of the SSA once the Appeals Council denied Gordon's request for review. *See Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); 20 C.F.R. § 404.981. This Court has jurisdiction over the present appeal under 42 U.S.C. § 405(g).

## III.    STANDARD OF REVIEW.

A claimant's disability benefits may be terminated upon a showing of the following: (1) a medical improvement in her impairment or combination of impairments; (2) related to the ability to do work; (3) that enables her to engage in substantial gainful activity. 42 U.S.C. § 423(f); *Williams v. Apfel*, 73 F. Supp. 2d 1325, 1337 (M.D. Fla. 1999). To determine whether there has been medical improvement in the claimant's condition, the fact finder must compare the medical evidence of the claimant's condition supporting the decision that she was disabled with the medical evidence of the claimant's condition after the date of the disability decision. This comparison point is called the comparison point decision (CPD) date. *Williams*, 73 F. Supp. 2d at 1330 n.3. Medical improvement is assessed by review of "'symptoms, signs and laboratory findings.'" *Id.* at 1337 (citing 20 C.F.R. § 404.1594(b)(1)). In other respects, the determination of whether the claimant is currently disabled follows the five-step evaluation process used in original disability determinations. *See* 20 C.F.R. § 404.1594(f).

This Court's review of a final decision issued by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *McDaniel v. Bowen*, 800 F.2d 1026, 1029-30 (11th Cir. 1986). While a great deal of deference is paid to the ALJ's factual findings, "[n]o similar presumption of validity attaches to the [ALJ's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

The Court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the SSA's decision. *Id*. at 1000. Even if the Court finds that the evidence weighs against the SSA's decision, it must affirm if the decision is supported by substantial evidence. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The Court may not reweigh the evidence or substitute its own judgment for that of the SSA. *Id*.

## IV.   ANALYSIS.

Gordon contends that the ALJ erred in his determination that her condition "had medically improved." Doc. No. 23 at 1. As discussed above, in order to make the finding of medical improvement, the ALJ was required to review the medical records prior to the CPD, in this case August 6, 1998, and the medical records and evidence after the CPD. *See, e.g.,* 20 C.F.R. § 404.1594(c)(1) ("Medical improvement . . . is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)."). Because the record before the Court does not contain the medical evidence supporting the original finding of disability,

substantial evidence does not support the finding that Gordon's condition medically improved after the CPD.

The Commissioner argues that the absence of the prior medical evidence is harmless error because both the ALJ and DHO described Gordon's condition before the CPD. There is, however, no way for the Court to review the accuracy of the ALJ and DHO's description of Gordon's condition at the CPD without the prior records.

Furthermore, the social security regulations set forth the procedure to be followed if prior records cannot be located. *See* 20 C.F.R. § 404.1594(c)(3)(v). Section 404.1594(c)(3)(v) states that if the file supporting the original disability determination cannot be located, and the SSA determines that the claimant can engage in substantial gainful activity, the SSA must determine whether the relevant parts of the prior record can be reconstructed. The regulation further provides as follows: "If relevant parts of the prior record are not reconstructed either because it is determined not to attempt reconstruction or because such efforts fail, *medical improvement cannot be found.*" *Id.* (emphasis added).

Courts that have confronted the failure of the SSA to produce the prior medical evidence in support of a medical improvement determination have found that failure to produce the relevant prior evidence requires reversal of the Commissioner's decision to terminate a claimant's benefits. *See, e.g., Walker v. Sec'y of Health and Human Servs.*, 817 F.2d 26, 28 (6th Cir. 1987); *Dicus v. Sullivan*, No. C-89-658-JBH, 1990 WL 264706, at *13 (E.D. Wash. Feb. 19, 1990). In both cases, the court required that the matter be remanded to the SSA to develop the record more fully by either including the prior evidence or, if the file could not be found, following the "lost file"

regulation discussed above.  In *Dicus*, remand was ordered even though a doctor employed by the Office of Disability Determinations opined, after the CPD, about the claimant's condition before the CPD.  The court required on remand that the SSA develop the record "with respect to the basis for, and the evidence supporting, the most recent favorable decision." *Dicus*, 1990 WL 264706, at *13.

The Commissioner has not advised the Court whether the prior records exist and simply were not included in the transcript of proceedings before the SSA presented to the Court, or whether the records cannot be found.  Accordingly, remand for further proceedings is appropriate to permit the SSA to locate and consider the prior records or follow the regulatory procedures for dealing with lost files.

**V.   CONCLUSION.**

It is **ORDERED** that the decision of the Commissioner is **REVERSED** and the case is **REMANDED** for further proceedings.  The Clerk of Court is directed to issue a judgment reversing the decision of the Commissioner of Social Security and remanding the matter for further proceedings and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida this 7th day of March, 2006.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties